IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GARRICK MILLER                                                      PETITIONER

V.                                                 CIVIL ACTION NO. 1:25-CV-00142-SA-RP

HEAD WARDEN ANGELENA JOHNSON                                       RESPONDENT

MEMORANDUM OPINION AND ORDER

Petitioner Garrick Miller has filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2254 challenging the revocation of probation and reinstatement of his suspended sentence from his conviction for possession of cocaine greater than two grams but less than ten grams. Having considered the parties submissions, the state-court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied for the reasons that follow.

Factual and Procedural Background

The Court notes that this case presents a myriad of events in state court. For purposes of flow and clarity, the Court will discuss and group those pertinent events as they occurred in the various stages of the state-court prosecution beginning with the initial guilty plea and sentence and culminating with the instant petition.

Guilty Plea and Sentence

On October 5, 2021, a Guilty Plea Hearing was held in the Circuit Court of Chickasaw County, Mississippi, during which Garrick Miller entered a guilty plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), on the charge of possession of cocaine—greater than two grams but less than ten grams. Doc. 31-1 at 23-37. The State then advised the trial court of its sentencing recommendation:

In exchange for Mr. Miller's plea of guilty the State recommends a sentence of eight years in the custody of the department of corrections as an habitual offender

with all 8 of those years suspended, leaving zero years to serve; that he be placed on 5 years supervised probation . . .

*Id.* at 35. The trial court accepted the State's recommendation and imposed the sentence set forth above but then went on to caution Miller that while he was on supervised probation, there were "certain terms and conditions" he must meet. *Id.* at 36.

On October 5, 2021, the same day of the hearing, Miller signed a Petition to Enter Plea of Guilty which memorialized Miller's *Alford* plea and the sentence from the hearing. Doc. 34-1 at 4-10. Also on that date, the trial court entered a Sentencing Order in which it sentenced Miller to serve eight years in the custody of the Mississippi Department of Corrections under § 99-19-81, with all eight years suspended. Doc. 31-1 at 58-60. The Order noted that the suspended sentence was "conditional upon the [Miller]'s good behavior and strict compliance with all the conditions given by the Court and/or set forth [in the Sentencing Order] under section 47-7-35 of the Mississippi Code Annotated of 1972, as amended." *Id.* at 58. The trial court further placed Miller on five years' post-release supervised probation subject to several rules and conditions. *Id.* at 58-59.

Revocation of Suspended Sentence

On January 7, 2022, the State filed a petition to revoke Miller's supervised probation and impose his suspended sentence due to a violation of the terms of said probation. Doc. 31-2 at 120-121. A supporting affidavit and warrant for his arrest confirmed Miller's violation of the terms of his supervised probation by the commission of three new felony offenses. *Id.* at 115-116. On January 21, 2022, the trial court held a hearing on the State's petition to revoke. *Id.* at 125-151. In an Order signed on January 21, 2022, and filed on the docket on January 26, 2022, the trial court revoked Miller's probation and imposed an eight-year sentence to serve in MDOC custody. *Id.* at 124.

First State PCR Motion

On January 23, 2023, Miller submitted a Motion for Post-Conviction Collateral Relief ("PCR") in the Chickasaw County Circuit Court. Doc. 31-1 at 12-22. In his PCR motion, Miller argued that his term of supervised probation was unlawfully revoked because: (1) the trial judge failed to explicitly inform him of the terms and conditions of his suspended sentence and probation; (2) the trial court lacked authority to alter his sentence; (3) he was denied due process by the trial court's failure to issue a written statement of the evidence relied upon and reason for revoking his suspended sentence; and (4) the trial court relied on insufficient evidence in revoking his suspended sentence. *Id.* at 20-21. On February 16, 2023, the trial court entered an Order Denying Relief Requested, finding, in pertinent part, as follows:

> After reviewing the documents filed by the Petitioner, as well as the transcripts of the plea colloquy and the revocation hearing in the underlying criminal cause of OK2016-028, the Court finds it plainly appears from the face of the motion and prior proceedings that [Miller] is not entitled to any relief.

*Id.* at 44.

Miller's Appeal of the First PCR Ruling

Miller filed a *pro se* Notice of Appeal on March 15, 2023, appealing the trial court's denial of his first PCR motion. *Id.* at 45-46. Miller submitted a *pro se* one-page appellant brief in which he asserted the following issues for review:

> [Miller] was unlawfully revoked [on] January 21, 2022[,] where [his] due process rights were violated at revocation when suspended sentence was revoked after [the] trial court fail[ed] to explicitly state a condition upon the suspended sentence. *Artis v. State*, 643 So. 2d 533 (1994).

> [Miller] was also resentenced at the revocation [hearing] to an enhanced habitual sentence *Riddle v. State*, 816 So. 2d 454 (2002). Since the authority to alter [Miller's] sentence, unless it involves the suspended sentence, [] ended with the term of court at which the sentence was given [sic]. *Harrigill v. State*, 403 So. 2d 867, 869 (Miss. 1981).

3

Doc. 31-7 at 1. In his *pro se* reply brief, Miller raised, for the first time, a claim of "newly discovered evidence" based on a pen pack and his case docket to challenge the State's argument that his probation was lawfully revoked. *Id.* at 19-79.

On November 26, 2024, the Mississippi Court of Appeals entered an opinion affirming the trial court's denial of PCR relief. *Miller v. State*, 412 So. 3d 393 (Miss. Ct. App. 2024), *reh'g denied*, Apr. 15, 2025, *cert. denied*, July 23, 2025 (Cause No. 2023-CP-00322-COA); *see also* Doc. 33-2. In its opinion, the state appellate court summarized the underlying facts related to Miller's revocation:

> A Chickasaw County grand jury indicted Miller for possession of a controlled substance (cocaine). In October 2021, Miller entered an *Alford* [fn omitted] plea to possession of a controlled substance (cocaine). The trial court sentenced Miller as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020) to serve eight years in the custody of the Mississippi Department of Corrections (MDOC), with all eight years suspended. The trial court conditioned Miller's suspended sentence upon Miller's "good behavior and [his] strict compliance with all of the conditions given by the [c]ourt and/or set forth below under [Mississippi Code Annotated] section 47-7-35[.]" The trial court also placed Miller on five years of supervised probation subject to the conditions of probation set forth in section 47-7-35 (Rev. 2015), including the condition that Miller "[c]omit no offense against the laws of this state or any other state of the United States . . . ."

> While on supervised probation, Miller sold methamphetamine to undercover officers with the North Mississippi Narcotics Task Force. He was also arrested for possessing and selling cocaine. In January 2022, MDOC field officer Sherlaine Mims filed an affidavit in the trial court alleging that Miller violated the conditions of his supervised probation by committing three new felonies. The State then filed a petition to revoke Miller's unsupervised probation based on these violations and impose suspended sentence.

> The trial court held a revocation hearing where the State presented testimony that Miller committed three new crimes (all felonies) while on probation. The trial court ultimately found that Miller more likely than not violated the terms of his suspended sentence by "[f]ailing to live at liberty without violating any laws." On January 26, 2022, the trial court entered an order revoking Miller's supervised probation and imposing his previously suspended eight-year sentence.

4

*Id.* at 394-395. The court of appeals then went on to analyze the issues presented. *Id.* The state appellate court first determined that Miller's brief failed to comply with the Mississippi Rules of Appellate Procedure in "several material respects" such that his claims were "procedurally barred from appellate review." *Id.* at 395. However, "[k]eeping in mind" that Miller was proceeding *pro se*, the court of appeals proceeded to review the merits of his claims "despite his procedural defaults." *Id.* at 396.

As to the merits of Miller's claims, the state appellate court first concluded that "[o]ur review of the record shows that the trial court clearly set forth in writing the terms and conditions of Miller's suspended sentence and supervised probation" and rejected Miller's claim that the trial court failed to advise him of the terms of his probation and, consequently, erred in revoking his probation and imposing the suspended sentence. *Id.* at 397. The state appellate court next reasoned that "[c]ontrary to Miller's claim, the record shows that . . . the trial court was not altering or amending Miller's sentence; rather, 'it was merely enforcing the sentence originally given.'" *Id.* at 398. (citation omitted). The state appellate court noted that testimony was presented demonstrating that Miller had committed three new felonies on probation, all of which violated the terms and conditions of his probation and suspended sentence. *Id.* The court of appeals concluded that "[u]pon finding that Miller violated the terms of his probation by committing felonies, the trial court in this case possessed the authority to fully reinstate [his] previously suspended eight-year sentence." *Id.* The state appellate court also held that Miller's "newly discovered evidence" claim was waived and could not be considered on appeal as it was raised for the first time in his reply brief. *Id.* at 395, n.2.

On December 13, 2024, Miller filed a *pro se* Motion for Rehearing of the court of appeals' decision, *see* Doc. 31-5 at 36-49, which was denied on April 15, 2025. *See Miller*, 412 So. 3d at

393; *see also* Doc. 33-2 at 1. On April 29, 2025, Miller signed and submitted a *pro se* Petition for Writ of Certiorari which was filed on the Mississippi Supreme Court's docket on May 2, 2025. Doc. 31-6 at 37-46. In an Order signed on July 22, 2025, and filed on July 23, 2025, the Mississippi Supreme Court denied Miller's petition for certiorari review. Doc. 33-4; *see also* Doc. 31-6 at 35. Just days later, on July 31, 2025, Miller submitted a "Supplemental Motion to Introduce Clear and Convincing Evidence Challenging Jurisdiction and Unlawful Incarceration." Doc. 31-6 at 4-31. In an Order dated September 11, 2025, the Supreme Court dismissed Miller's motion to supplement because certiorari had already been denied. *Id.* at 2.

Second and Third State PCR Motions

On September 30, 2024, while his appeal of the trial court's denial of his first PCR motion was still pending, Miller submitted a second *pro se* Motion for Post-Conviction Collateral Relief which was filed on the Chickasaw County Circuit Court's docket on October 16, 2024. Doc. 31-8 at 7-63. In this second PCR motion, Miller challenged his original *Alford* plea to the possession of cocaine charge. *Id.* The trial court entered an Order denying Miller's second PCR motion on July 30, 2025.[1] *Id.* at 64-68; *see also* Doc. 33-6. In the order denying relief, the trial court explained that Miller's second PCR motion consisted of claims of "(1) lack of subject matter jurisdiction; (2) ineffective assistance of counsel; (3) and illegal and unconstitutional sentence." *Id.* The trial court found that Miller's filing was barred as successive under Mississippi Code Annotated § 99-39-23(6) and he had failed to demonstrate the applicability of any of the exceptions to overcome the bar. *Id.*

Because Miller asserted the violation of a fundamental right, however, the trial court acknowledged that the merits of his motion must be addressed regardless of the procedural bars.

---

[1] The trial judge signed the Order on July 30, 2025, but it was "Filed" on the docket on July 31, 2025. Doc. 31-8 at 68.

6

*Id.* Thus, the trial court addressed Miller's "illegal sentence" claim, including his allegations concerning a "'fraudulent indictment,' 'joint indictment,' and/or a change in charges," noting that the "bulk of his motion appears to focus on perceived errors relating to two cases other than his own." *Id.* The trial court additionally addressed Miller's allegations of ineffective assistance of counsel and his insistence that neither the trial judge nor the prosecutor explained his sentencing enhancement during the plea hearing. *Id.* The trial court ultimately concluded that Miller failed to meet his burden to demonstrate an exception to the successive-writ bar; further, the trial court alternatively held that "[s]uccessive-writ bar notwithstanding . . . Miller's claims are entirely without merit." *Id.* The state court docket confirms that Miller did not appeal the trial court's denial of his second PCR motion. Doc. 31-8 at 1-23.

While his second PCR motion was still pending, Miller filed a third Motion for Post-Conviction Relief on March 7, 2025, in the Chickasaw County Circuit Court. Doc. 31-9 at 2-14. The docket of the case on Mississippi Electronic Courts reflects that Miller's third PCR motion is still pending before the trial court. *Id.* at 1.

Federal Habeas Proceedings

Miller initiated these proceedings by filing a handwritten federal habeas petition in the District Court for the Southern District of Mississippi on July 28, 2025. Doc. 1. Miller was subsequently directed to file his habeas petition on the court's standard form for petitions filed under 28 U.S.C. § 2254. Doc. 2. On August 29, 2025, Miller complied with the court's directive and submitted his petition on the standard § 2254 form. Doc. 13. On September 9, 2025, Miller's case was transferred to this District, *see* Doc. 14, and on September 9, 2025, this Court ordered Respondent to respond to Miller's petition. Doc. 17. On September 22, 2025, Miller moved to

amend/supplement his petition, *see* Doc. 21, which the Court granted by Order dated September 29, 2025. Doc. 25.

In the instant petition, Miller raises the following grounds for relief (as stated by Miller):

| | |
|---|---|
| Ground One: | Violation of due process—unlawful revocations post 2003. Petitioner's probation was terminated in 2003. All revocations after that date were unauthorized, violating his due process rights under the Fourteenth Amendment. Doc. 1 at 3. |
| | Unlawfully revoked and the sentence/probation expired and was resentenced at revocation. 15-year sentence in April 17, 2020, with 9 suspended 6 to serve and 5 years probation. However, MDOC misrecorded it as 6 years 60 months probation. No reflection of the fifteen year sentence in MDOC record. Discharged 12/08/03 no valid probation after this date but have been revoked 2004, 2005, 2012, 2014, 2016, 2022. Doc. 13 at 8. |
| Ground Two: | Unlawful detention for over 20 years. Petitioner has been subjected to custody without valid authority, constituting false imprisonment in violation of the Fourteenth Amendment. Doc. 1 at 4. |
| | Unlawful revocation expired sentence and probation. I have been held unlawfully under revocation for over 20 years post-2003 (no) valid probation existed. I have no valid intake or commitment order and [am] being held unlawfully under completed sentence. Doc. 13 at 11. |
| Ground Three: | Illegal arrest and habitual enhancement based on void supervision. Petitioner's arrest and enhanced sentence in 2022 were based on a supervision term that legally ended in 2003. This violates the Fourth and Fourteenth Amendments. Doc. 1 at 4. |
| Ground Four: | Appellate court improperly relied on unadjudicated allegations. The Court of Appeals affirmed petitioner's judgment based on a new allegation (sale of cocaine) not adjudicated in any court. *Id.* at 4-5. |
| Ground Five: | Ineffective Assistance of Counsel. At the January 21, 2022 revocation hearing, petitioner was represented by attorney Carter Hitt who failed to investigate or raise the critical legal |

issue that petitioner's probation had long since expired or was never properly imposed after the original sentence of April 17, 2000.

Despite the absence of any MDOC records showing a valid probation term or a lawful revocation entry in the general docket of the sentencing court, counsel allowed the state to proceed with revocation and resentencing, without objection or proper challenge.

This failure constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), as it deprived petitioner of a meaningful opportunity to contest an unlawful deprivation of liberty.

After the revocation, petitioner retained attorney Adam Pinkard to investigate and challenge the legality of his continued confinement. However, Pinkard failed to file any meaningful motion or pursue available remedies despite being presented with certified documentation establishing the lawful basis for the sentence.

This compounded harm caused by prior counsel and further delayed relief.

Both attorney's deficient performance – one during the critical stage of revocation, and the other during post-conviction representation – violated Petitioner's Sixth and Fourteenth Amendment rights, and contributed directly to his continued unlawful detention. *Id.* at 5-7.

In his "Supplemental Notice in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254", Doc. 7, and "Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254", Doc. 8, Miller appears to raise three additional grounds for relief:

Ground Six: Actual Innocence – No legitimate intake, no valid indictment, and falsified plea documentation provide sufficient new evidence that no reasonable juror would have convicted petitioner. Doc. 7 at 5; *see also* Doc. 8 at 13.

Ground Seven: Judicial Conflict – Mississippi Supreme Court appointed Judge Andrew K. Howorth on Miller's civil practice suit,

9

and Howorth presided over Miller's 2005 revocation. *Id.* at 7-8; *see also* Doc. 8 at 8-11.

Ground Eight:    National Investigation of No-Knock Abuse – Petitioner's arrest and revocation align with findings from the Marshall Project, Mississippi Today, Daily Journal and Washington Post which reported widespread use of illegal no-knock raids in Monroe County. Doc. 7 at 8.

On December 29, 2025, Respondent filed its response to Miller's petition and supplements, arguing that Miller's petition should be denied. Doc. 33. Respondent specifically contends that Miller's claims raised in Grounds Five, Six, Seven, and Eight are procedurally defaulted whereas his claims in Grounds One, Two and Three are procedurally barred and precluded from a merits review. Doc. 33 at 15-29. Respondent argues that Miller's claim in Ground Four is without merit and fails to overcome the applicable deferential standards of review. *Id.* at 29-39. While Miller did not file a reply to Respondent's response, he has filed a litany of miscellaneous motions related to his claims, all of which will be adjudicated herein. *See* Docs. 34, 35, 41, 44, 45.

The Doctrines of Procedural Default and Procedural Bar

If an inmate seeking habeas corpus relief fails to exhaust an issue in state court—and no more avenues exist to do so—under the doctrine of procedural default that issue cannot be raised in a federal habeas corpus proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, "[w]hen a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir. 2001) (citations omitted). This doctrine is known as procedural bar.

10

<u>Cause and Prejudice—and Fundamental Miscarriage of Justice—
As Ways to Overcome Procedural Default and Bar</u>

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome the barriers remain the same. First, the petitioner can overcome the procedural default or bar by showing cause for it—and actual prejudice from its application. *United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). For a finding of cause, "there must be something *external* to the petitioner, something that cannot be fairly be attributed to him" which prevented him from raising and discussing the claims as grounds for relief in state court. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).

Even if a petitioner cannot meet the cause and prejudice standard, he may still overcome the procedural default or bar if he can show that a fundamental miscarriage of justice would result if the default or bar were applied. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citations omitted). To show that such a miscarriage of justice would occur, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted). Further, he must support his allegations with new, reliable evidence, that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 644 (citations omitted).

<u>Grounds Five, Six, Seven and Eight: Procedural Default</u>

The Court first considers Respondent's argument that Miller has procedurally defaulted his claims raised in Grounds Five, Six, Seven and Eight by failing to present them to the state courts for review. "Applicants seeking federal habeas relief under § 2254 are required to exhaust all

claims in state court prior to requesting federal collateral relief." *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). To satisfy this requirement, a federal habeas petitioner must generally present his claims to the state's highest court in a procedurally proper manner and provide that court with a fair opportunity to pass upon the claims. *See O' Sullivan v. Boerckel*, 526 U.S. 838 (1999). If an inmate seeking federal habeas corpus relief fails to exhaust an issue in state court—and no more avenues exist to do so—under the doctrine of procedural default that issue cannot be raised in a federal habeas corpus proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

In Ground Five, Miller argues he received ineffective assistance of counsel at his revocation hearing and later when he retained counsel to "investigate and challenge the legality of his continued confinement." In Ground Six, Miller asserts "actual innocence" based on challenges to the indictment, plea documentation and intake into the MDOC system after his revocation. In Ground Seven, Miller alleges a "judicial conflict" in the appointment of Judge Howorth on a separate civil suit filed in trial court by his retained counsel. And, lastly, in Ground Eight, Miller generally complains about "no-knock raids" seemingly believing such raids are relevant to his arrest and revocation.

As set forth above, Miller filed three motions for post-conviction relief in the Chickasaw County Circuit Court. None of the claims raised in these four grounds were raised in the initial PCR motion, the trial court's denial of which Miller appealed. While Miller did *seemingly* raise Ground Five (ineffective assistance of counsel) in his second PCR motion, the trial court correctly noted that the second PCR motion was barred as successive under Mississippi Code Annotated § 99-39-23(6) and he had failed to demonstrate the applicability of any of the exceptions to overcome the bar. Moreover, Miller failed to appeal the trial court's denial of his second PCR motion.

12

Based on this set of events, it is clear both that Miller has failed to exhaust these claims in state court and, further, that his failure to do so renders these claims procedurally defaulted. This is so because the time for filing an appeal from the trial court's order denying Miller's second PCR motion has long passed.[2] *See* Miss. R. App. P. 4(a) (providing that a notice of appeal must be filed within thirty days (30) days after the date of entry of the judgment or order appealed from). Moreover, any future motions for post-conviction relief asserting claims stemming from the revocation and reimposition of sentence at issue here would be dismissed as procedurally barred. *See* Miss. Code Ann. § 99-39-23(6)[3] (providing that "any order dismissing the petitioner's motion or otherwise denying relief . . . shall be a bar to a second or successive motion under this article."); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."). As such, Miller has defaulted these claims, and they are procedurally barred from federal habeas review.[4]

Thus, to obtain habeas review of his defaulted claims, Miller must demonstrate cause for the default and actual prejudice as a result, or that a failure to consider the claim(s) would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Miller has not demonstrated—or even alleged—what might be cause for his failure to raise these claims on direct

---

[2] The Court is mindful that Miller's third PCR motion was still pending at the time he filed the instant petition.

[3] The Fifth Circuit has held that Section 99-39-23(6) is an independent and adequate state bar. *See Chancellor v. Mississippi, et al.*, 129 F. App'x 878 (5th Cir. 2005); *see also Moawad v. Anderson*, 143 F.3d 942 (5th Cir. 1998), *Lott v. Hargett*, 80 F.3d 161 (5th Cir. 1996).

[4] *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

appeal or on appeal from post-conviction proceedings. Because he has failed to demonstrate cause, the Court need not consider whether there is prejudice. *See Martin*, 98 F.3d at 849. Moreover, there has been no showing that failure to consider these claims would result in a fundamental miscarriage of justice. Miller has not alleged, much less proven, that, as a factual matter, he did not commit the crime of conviction (or the underlying offenses prompting revocation), nor has he identified any new, reliable evidence to support his claims.[5] *See Fairman*, 188 F.3d at 644. Accordingly, the claims raised in Grounds Five, Six, Seven and Eight are not cognizable for federal habeas review.

<u>Grounds One, Two, and Three: Procedural Bar</u>

The Court next considers Miller's claims raised in Grounds One, Two and Three. In Ground One, Miller argues that all revocations "post 2003" violated his "due process rights." Miller believes he was unlawfully revoked because, in his view, he was discharged from MDOC custody in 2003 with no "valid probation" after that date, yet has been revoked six times since in 2004, 2005, 2012, 2014, 2016 and 2022. In Ground Two, Miller alleges he has been unlawfully detained and falsely imprisoned for over twenty years without "valid authority." According to Miller, he is unlawfully held under a completed sentence with no "valid intake or commitment

---

[5] While Miller asserts "actual innocence", he supports this assertion with arguments about "no legitimate intake, no valid indictment, and falsified plea documentation" rather than arguing that he factually did not commit the crime or offenses underlying the revocation. Moreover, the Court notes that Miller asserts such as a separate claim for relief but claims of "[a]ctual innocence [are] not [] independently cognizable federal habeas claim[s]." *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *see also Pipkin v. State*, 350 So. 3d 1147, 1152-53 (Miss. Ct. App. 2022) (noting that claims of "actual innocence" are raised to overcome a procedural bar and are contingent upon, and related to, an additional constitutional claim, not a claim on its own); *Henderson v. State*, 170 So.3d 547, 554 (Miss. Ct. App. 2014) (same); *see also Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Instead, such claims are merely "a gateway to consideration of claims of constitutional error that otherwise would be barred from review." *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012) (citation omitted).

order." In Ground Three, Miller argues that his arrest and sentence imposed in 2022 is predicated on a term of supervision that "legally ended in 2003."

The Court would be remiss in failing to point out that it *seems* as though these claims were *not* previously presented to the state courts in Miller's PCR motions. As such, the claims raised in Grounds One, Two, and Three would be procedurally defaulted just as those claims raised in Grounds Five, Six, Seven, and Eight for the same reasons discussed above. That aside, to the extent that these claims in Grounds One, Two, and Three challenge any revocation prior to 2022, such claims are not properly before this Court. "A petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court." Rule 2(e) of the Rules Governing Section 2254 Cases in the United States District Courts.

To the extent that the arguments raised in Grounds One through Three can be liberally construed as the claims raised in Miller's first PCR motion, the denial of which was appealed to the state appellate court, those claims are procedurally barred from federal habeas review. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre*, 238 F.3d at 634. The adequacy of the bar applied to Miller's claims depends on "whether Mississippi has strictly or regularly applied it." *Id.* (citation omitted). Miller, however, bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.*

On appeal, the Mississippi Court of Appeals held that Miller's *pro se* brief "failed to comply" with Mississippi Rule of Appellate Procedure 28(a) "in several material respects." *Miller*,

412 So. 3d at 395 (citations omitted). The court of appeals concluded Miller had failed to cite authority for his jurisdiction challenge such that Miller's claims were "procedurally barred from appellate review." *Id.* (citation omitted). As district courts in this state have recognized, the failure-to-cite-authority procedural bar has long been held to be an independent and adequate state law ground. *See Queen v. Huffman*, No. 5:24-cv-001-DCB-BWR, 2025 WL 2180640, at * 4 (S.D. Miss. May 5, 2025); *Morris v. Cain*, No. 3:22-cv-280-TSL-MTP, 2023 WL 6884161, at *5 (S.D. Miss. July 31, 2023); *Flynt v. Fairley*, No. 2:18-cv-050-KS-JCG, 2019 WL 8755119, at *4 (S.D. Miss. Oct. 3, 2019) (collecting cases); *Glasper v. McCaskey*, No. 4:07-cv-M-B, 2008 WL 2699791, at *3 (N. D. Miss. June 30, 2008); *Bobo v. Mississippi*, No. 2:06-cv-P-B; 2007 WL 1322087, at *3, n.3 (N.D. Miss. May 4, 2007). Moreover, state courts strictly or regularly apply the procedural bar for failure to cite authority to support a claim with any meaningful argument. *See generally id.*

Miller has not carried his burden of proof and shown an "inconsistent and irregular" application of the bar. *See Stokes*, 123 F.3d at 861. Thus, the Court may review the merits of these claims only if Miller can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *See Coleman*, 501 U.S. at 750. Miller has not identified any external action which prevented him from citing authority or otherwise substantively supporting the claims raised in Grounds One through Three when presented to the state appellate court. *See id.* Nor has he demonstrated any actual prejudice as a result of the imposition of this bar. Moreover, Miller has not presented any new, reliable evidence that would show that, "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *See Fairman*, 188 F.3d at 644. Accordingly,

16

Miller's claims raised in Grounds One, Two and Three are therefore procedurally barred from federal habeas review.[6]

Ground Four: The Merits

Now to Miller's remaining claim in Ground Four: his argument that the state appellate court "improperly relied on unadjudicated allegations" to affirm the trial court's denial of post-conviction relief. The Court believes it important to first note that Miller *appears* to present this claim as falling within the due process purview. However, to the extent that his claim can be construed as merely a challenge to the application of state law, such a claim would not serve as a basis for federal habeas relief. *See Estelle v. McGuire*, 5002 U.S. 62, 67-68 (1991) (holding that "federal habeas corpus relief does not lie for errors of state law."); *see also Jackson v. Anderson*, 112 F.3d 823, 825 (5th Cir. 1997) (explaining that the Court "will take the word of the highest curt on criminal matters of [Mississippi] as to the interpretation of its law")(citation omitted).

The Mississippi Court of Appeals' merits determination limits this Court's authority to grant federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal district court cannot grant federal habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

---

[6] While true that the state appellate court did an alternative merits analysis, when a claim is "barred by independent and adequate state law grounds," "the state court's review of the merits does not vitiate the procedural bar," including plain error review. *Moffite v. Hoffman*, 2023 WL 4924798, at *3 n.2 (S.D. Miss. July 10, 2023) (citations omitted).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law or identify the correct governing law but misapply it to the case. *Id.* at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original; citation omitted). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

It is well-established that a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *Sawyer v. Butler*, 848 F.2d 582, 594 (5th Cir. 1988). In the context of a probation violation, the defendant's rights are more circumscribed. This is so because "revocation of [probation] is not a part of a criminal prosecution and thus the full of panoply of rights due a defendant in such a proceeding does not apply to [probation] revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). As such, revocation proceedings need only meet the "minimum requirements of due process" by providing the following procedural safeguards:

1. Written notice of claimed violations of (probation or) parole;

2. Disclosure to the (probationer or) parolee of evidence against him;

3. Opportunity to be heard in person and to present witnesses and documentary evidence;

4. The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds a good cause for not allowing confrontation);

18

5. A "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

6. A written statement by the fact finders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey*, 408 U.S. at 489).

As noted above, Miller challenges the Mississippi Court of Appeals' decision affirming the trial court's denial of his PCR motion because, he argues, his revocation was "based on a new allegation not adjudicated in any court." Miller's argument in his state court appeal is not identical to the argument presented here, but the Court liberally construes Miller's claims given his *pro se* status. On appeal, Miller argued "that the trial court failed to explicitly state the terms and conditions of his probation at the time it suspended his sentence and placed him on probation." *See Miller*, 412 So. 3d at 396; *see also* [32-3] at 3. Miller further asserted "that the trial court failed to orally inform hm that his suspended sentence and supervised probation were contingent on any terms and conditions." *Id.*

The court of appeals first set forth the correct applicable standard noting that "[u]nder Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation." *Id.* (citing *Gray v. State*, 269 So. 3d 331, 337 (Miss. Ct. App. 2018) (quoting *Smith v. State*, 196 So. 3d 986, 996) (Miss. Ct. App. 2015)). The state appellate court clarified, however, that the trial court must "base its revocation on the violation of the clear terms and conditions of the suspended sentence." *Id.* (citing *Artis v. State*, 643 So. 2d 533, 537 (Miss. 1994)).

In analyzing Miller's arguments, the court of appeals highlighted that the transcript from his plea hearing showed that the trial court "asked Miller if he understood that he would 'have certain terms and conditions' to meet while on supervised probation" to which "Miller answered

19

affirmatively." *Id.* at 397. As the state appellate court noted, the trial court further "informed Miller that his probation officer would remind Miller of the terms and conditions of his probation." *Id.*

The court of appeals further pointed to the sentencing order which clearly stated that "[the] suspended sentence is conditional upon [Miller's] good behavior and strict compliance with all of the conditions given by the [c]ourt and/or set forth below under section 47-7-35[.]" *Id.* The sentencing order additionally imposed a five-year term of supervised probation and subjected Miller to fourteen clearly articulated conditions, including that Miller "[c]ommit no offense against the laws of this state or any other state of the United States, or of the United States[.]" *Id.* At Miller's revocation hearing, the trial court highlighted that Miller had signed the sentencing order thereby confirming acknowledgment of the terms and conditions imposed. *Id.* And Miller admitted during the revocation hearing that he knew it was illegal to sell cocaine. *Id.* The state appellate court ultimately concluded the record showed the trial court had "clearly set forth in writing the terms and conditions of Miller's suspended sentence and supervised probation." *Id.*

The court of appeals next turned to Miller's argument "that the trial court lacked jurisdiction to 'resentence' him at the revocation hearing." *Id.* at 398. The state appellate court emphasized "the trial court heard testimony that Miller committed three new felonies while on probation, which violated the terms and conditions of his probation and suspended sentence." *Id.* As noted by the court of appeals, the Mississippi Supreme Court has held that "[a] probationer does have to be convicted of a crime to be in violation of his probation[,]but, rather, probation may be revoked when it is more likely than not that a violation has occurred." *Id.* (citing *McCalpin v. State*, 166 So. 3d 34, 26-27 (Miss. 2013)). Moreover, under Mississippi law, a trial court "has the authority to revoke a defendant's probation and 'impose any or all of the sentence' if the trial court

20

'finds by a preponderance of the evidence [] that probationer . . . has committed a felony[.]" *Id.* (citing Miss. Code Ann. § 47-7-37.1 (Rev. 2023)). Federal district courts have likewise recognized that "[p]robation revocations are not subject to a reasonable doubt standard. Under Mississippi law, a conviction is not necessary for the court to revoke probation. The trial judge may revoke probation upon a showing that the defendant has more likely than not violated the terms thereof." *Pruitt v. Epps*, 2016 WL 908291, at *13 (S.D. Miss. Feb. 15, 2016) (citation omitted).

Upon due consideration, the Court finds that Miller was afforded all necessary procedural safeguards during the state revocation proceeding at issue. As such, the Court finds that Miller has failed to establish that the state appellate court's rejection of this claim was contrary to, or an unreasonable application of, federal law nor was it based on an unreasonable determination of the facts. The Court, therefore, finds that Miller is not entitled to federal habeas relief on Ground Four.

Miller's Various Pending Motions

Since initiating this federal habeas corpus action, Miller has filed a litany of motions, all of which pertain to the claims addressed herein. As the Court has determined that Miller is not entitled to federal habeas relief on any of those claims, it logically follows that these pending motions should be denied.

Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner, and Miller must obtain a COA before appealing this Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). This Court may only grant a COA if the petitioner "has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). To obtain a COA for claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" for a COA to issue. *Id.* Applying this standard, the Court concludes that a COA should be denied.

Conclusion

Based on the foregoing discussion, the Court finds that Miller's claims raised in Grounds One, Two and Three are procedurally barred from review under an independent and adequate state procedural bar while his claims raised in Grounds Five, Six, Seven and Eight are procedurally defaulted for failure to raise those claims in state court. The Court further finds that Miller has failed to demonstrate that the state court adjudication of his claims raised in Ground Four resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor that the decision was based on an unreasonable determination of facts in light of the evidence presented. Accordingly, habeas relief is DENIED, and Miller's petition is hereby DISMISSED WITH PREJUDICE. The Court further DENIES a certificate of appealability. Miller's pending motions [34, 35, 41, 44, 45] are DENIED with prejudice. A separate judgment in accordance with this Memorandum Opinion and Order will be filed this day.

SO ORDERED, this the 7th day of July, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE